UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re: **Luis E. Solis and Dinorah Solis,** Debtors. | Bankruptcy No. 07 B 70853<br>Chapter 7<br>Judge Manuel Barbosa |
|---|---|

### MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56 made applicable by Fed. R. Bankr. P. 7056 and 9014, filed by Daniel M. Donahue, Chapter 7 Trustee ("Trustee") and attorney Joseph O'Callaghan ("O'Callaghan") relating to Trustee's objection to O'Callaghan's Claim #3 (attorney lien), pursuant to 11 U.S.C. § 502(b)(1), (4) (2006). For the reasons set forth herein, the Court GRANTS Trustee's Motion for Summary Judgment and SUSTAINS Trustee's objection, in part. The Court also DENIES O'Callaghan's Motion for Summary Judgment. Thus, O'Callaghan is only entitled to 40% of the $60,000 he recovered, plus $755.63 in expenses, for a grand total of $24,755.63.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS AND BACKGROUND

Debtor Luis E. Solis ("Luis"), a Spanish-speaking immigrant with limited English fluency, was injured while working on November 15, 2001 and May 21, 2002. (Luis V.S., Apr. 11, in Trustee's Rule 7056-1 Statement of Material and Uncontested Facts, Ex. B ¶ 1 [hereinafter Luis V.S.].) There is no dispute that Luis suffered substantial, permanent injuries to his spine, including herniated discs. Thereafter, Luis hired Daniel S. Bailey, David W. Martay, and

William H. Martay, individually and d/b/a Martay & Martay, as his attorneys to prosecute his worker's compensation cases, docket numbers 02 WC 15965 and 02 WC 49577, with the Illinois Industrial Commission. (Luis V.S. ¶ 4.) Luis' cases settled in 2004 for $135,000. (Luis V.S., Apr. 11 ¶ 5.) On September 15, 2004, attorney David W. Martay ("Martay") issued a check in Luis' name for $107,980, the sum due to Luis after adjustments for attorney's fees and costs, and transmitted the check to Luis' attorney Daniel S. Bailey ("Bailey"). (Luis V.S. ¶ 7.) Bailey's secretary, Marua Mora ("Mora"), deposited the funds into her account at West Suburban Bank. (Luis V.S. ¶ 9.) On February 3, 2005, Mora caused to be issued a cashier's check for $62,410 from the "Law Office of Daniel Bailey" to Luis, which she represented as a partial payment from his attorneys. (Luis V.S. ¶ 10.) Mora was later convicted of fifteen (15) counts of theft in connection with misappropriating one and one half million dollars, including the $107,980 from Luis' settlement. (Luis V.S. ¶ 9.)

On February 21, 2006, Luis retained the services of attorney Joseph O'Callaghan ("O'Callaghan") to collect his full settlement proceeds. (Contract for Contingent Fee Arrangements 1; Trustee's Rule 7056-1 Statement of Material & Uncontested Facts ¶ 17.) In their contractual agreement, Luis agreed to a contingent fee of 40% for "any gross amount recovered . . . [which] may be subject to Court approval" should a suit be filed, plus costs. (Contract for Contingent Fee Arrangements 2–3.) Suit was filed in the Circuit Court of Cook County, Illinois on December 15, 2006 styled as <u>Solis v. Bailey</u>, No. 05 L 14604. (Am. Compl. at Law 1.) The parties reached a written settlement agreement in 2007. (Release and Settlement Agreement ¶ 2.1.) In an order dated March 2, 2007, the Circuit Court of Cook County found that Luis was the sole owner of the original $62,410 that Mora paid him. (Order of Circuit Court of Cook County, Mar. 2, 2007 ¶ 5.)

Debtors Luis and Dinorah Solis filed a voluntary Chapter 7 bankruptcy petition on April 11, 2007. The first meeting of the creditors was held on May 10, 2007. On September 4, 2007, O'Callaghan filed a Motion and Application for Compensation. On November 8, 2007, the Court entered an order denying O'Callaghan's motion for compensation as premature and granted leave to timely file a Proof of Claim.

On April 29, 2008, Trustee filed a Motion for Turnover of Funds to recover $60,000 from the 2007 settlement. O'Callaghan filed a response to Trustee's motion on May 16, 2008 and requested that the Court prevent the turnover of $49,719.63, that was his alleged compensation from the settlement case. The Court granted Trustee's motion for turnover in an order dated May 21, 2008. O'Callaghan then filed a Motion to Vacate on June 2, 2008 that the Court denied on July 18, 2008.

On September 12, 2008, O'Callaghan filed Claim #3 for $49,719.63, including $48,964 in fees and $755.63 in expenses. Trustee filed an objection on November 20, 2008. O'Callaghan filed an answer on December 19, 2008. Trustee then filed a Motion for Summary Judgment on January 23, 2009 and O'Callaghan filed a Cross-Motion for Summary Judgment on March 9, 2009. Trustee responded on April 1, 2009 and O'Callaghan replied on April 10, 2009.

## PARTIES' ARGUMENTS

*Trustee's Summary Judgment Arguments*

1. O'Callaghan did not recover the original $62,410 that Mora tendered to Luis on February 3, 2005, more than a year before Luis retained O'Callaghan as counsel. Instead, O'Callaghan only recovered $60,000. Thus, pursuant to the contingent fee agreement, O'Callaghan is entitled to only 40% of $60,000, $24,000, plus $755.63 in costs. Therefore, O'Callaghan's claim should be reduced to $24,755.63 pursuant to 11 U.S.C. §

502(b)(1).

2. O'Callaghan's fee of $48,964 is unreasonable and should be denied pursuant to 11 U.S.C. § 502(b)(4), because he only recovered $60,000, through the 2007 settlement agreement, rather than $60,000 from the 2007 settlement agreement and $62,410 ownership claim from the March 2, 2007 order.

*O'Callaghan's Cross-Motion for Summary Judgment Arguments*

1. Trustee was not duly appointed and, therefore, lacks standing to bring an objection.

2. The original transfer of $62,410 was from commingled, stolen funds and Luis' right to this sum could have been contested until the March 2, 2007 order was entered. Therefore, O'Callaghan recovered $60,000 and $62,410 through the 2007 settlement agreement, which equates to $122,410.[1]

## DISCUSSION

*Standard of Review*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 is also applicable to contested motions through Federal Rule of Bankruptcy Procedure 9014. See In re Vastag, 345 B.R. 882, 884 (Bankr. N.D. Ill. 2006). Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). "The primary purpose of a grant of summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." Farries v.

---
[1] This is $14,430 above what Luis had received from his workers compensation case.

Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir. 1987) (quoting <u>Wainwright Bank & Trust Co. v. Railroadmen's Fed. Sav. & Loan Ass'n of Indianapolis</u>, 806 F.2d 146, 149 (7th Cir. 1986)).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. <u>Anderson</u>, 477 U.S. at 248; <u>Matsushita</u>, 475 U.S. at 585–86; <u>Celotex</u>, 477 U.S. at 322.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. <u>Anderson</u>, 477 U.S. at 255; <u>Peerman v. Georgia-Pac. Corp.</u>, 35 F.3d 284, 286 (7th Cir. 1994); <u>Cuddington v. N. Ind. Pub. Serv. Co.</u>, 33 F.3d 813, 815 (7th Cir. 1994). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. <u>Anderson</u>, 477 U.S. at 248; <u>Frey v. Fraser Yachts</u>, 29 F.3d 1153, 1156 (7th Cir. 1994). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." <u>Lohorn v. Michal</u>, 913 F.2d 327, 331 (7th Cir. 1990). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587.

The parties have filed cross-motions for summary judgment. The motions must be ruled on independently and must be denied if there are genuine issues of material fact. <u>Grochocinski</u>

v. Spehar Capital, LLC (In re CMGT, Inc.), Nos. 04 B 31669, 07 A 00838, 2008 WL 4767434, at *8 (Bankr. N.D. Ill. Oct. 30, 2008) (citing ITT Indus. Credit Co. v. D.S. Am., Inc., 674 F. Supp. 1330, 1331 (N.D. Ill. 1987)). Cross-motions for summary judgment do not require the court to decide the case on the motions; the court can deny both motions if both parties have failed to meet the burden of establishing that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. Id. (citing ITT Indus. Credit Co. v. D.S. Am., Inc., 674 F. Supp. at 1331). In addition, cross-motions for summary judgment do not warrant the granting of summary judgment where the decision of a question of law depends upon inquiry into surrounding facts and circumstances, and in such instance, summary judgment should be refused until such facts and circumstances have been sufficiently developed to enable the court to be reasonably certain that it is making the correct determination on the question of law. Id. (citing Nugent v. United States, 136 F. Supp. 875, 878 (N.D. Ill. 1955)). Thus, on their respective motions, O'Callaghan and Trustee each bear the burden of demonstrating the absence of material factual issues and establishing that judgment should be entered in its favor as a matter of law. Lindemann v. Mobil Oil Corp., 141 F.3d 290, 294 (7th Cir. 1998).

Local Rule 7056-1 of the Bankruptcy Rules adopted for the Northern District of Illinois requires the party moving for summary judgment to file a detailed statement of material facts that the movant believes are uncontested. Local Bankr. R. 7056-1. Under Local Bankr. R. 7056-1(B), the statement of facts "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion."

The party opposing a summary judgment motion is required by Local Rule 7056-2 to

respond to the movant's Local Rule 7056-1 statement paragraph by paragraph and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr. R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr. R. 7056-2(A)(2)(a).

*Trustee Was Duly Appointed*

O'Callaghan's argument that Trustee was not duly appointed is without merit. Pursuant to 11 U.S.C. § 701(a)(1), the United States Trustee duly appointed Trustee as interim trustee. See also In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 691 (7th Cir. 1992); In re Stoecker, 114 B.R. 965, 968 (Bankr. N.D. Ill. 1990). When creditors failed to elect a trustee at the § 341 meeting, Trustee became the permanent trustee, pursuant to 11 U.S.C. § 702(d). See also In re Stoecker, 114 B.R. at 968; Waldschmidt v. Siva Truck Leasing, Inc. (In re Lang Cartage Corp.), 20 B.R. 534, 535 n.1 (Bankr. Wis. 1982).

*Objection to Claim*

When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim - i.e., a document providing proof of a "right to payment," 11 U.S.C. § 101(5)(A) - against the debtor's estate. Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 449, 127 S. Ct. 1199, 1204, 167 L. Ed. 2d 178 (2007). Once a proof of claim has been filed, the court must determine whether the claim is "allowed" under § 502(a) of the Bankruptcy Code: "A claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects." Id. (quoting 11 U.S.C. § 502(a)). Federal Rules of Bankruptcy Procedure 3007(a) provides for parties of interest to object to proofs of claim. Fed. R. Bankr. P. 3007(a);

see also Adair v. Sherman, No. 98 C 3946, 1999 WL 117754, at *3 (N.D. Ill. Mar. 1, 1999), aff'd, 230 F.3d 890 (7th Cir. 2000). Trustee, as a party in interest, has power and standing to object to claims. See In re Grocerland Co-op., Inc., 32 B.R. 427, 430-34 (Bankr. N.D. Ill. 1983).

Even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). Travelers Cas. & Sur. Co. of Am., 549 U.S. at 449 (quoting 11 U.S.C. § 502(a)). Specifically, one exception applies where the claim at issue is "unenforceable against the debtor . . . under any agreement or applicable law." Id. (quoting 11 U.S.C. § 502(b)(1)). Another exception applies if the claim at issue is "for services of an . . . attorney of the debtor" and "exceeds the reasonable value of such services." 11 U.S.C. § 502(b)(4).

The § 502(b)(1) provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. Travelers Cas. & Sur. Co. of Am., 549 U.S. at 450 (citing 4 Collier ¶ 502.03[2] [b], at 502-22). Moreover, "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Id. (quoting Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000)). Thus, this principle requires bankruptcy courts to consult state law in determining the validity of most claims. Id. (quoting Raleigh, 530 U.S. at 20).

Section 502(b)(4), providing for disallowance of claims predicated upon services rendered by an attorney for debtor where the services performed exceed the reasonable value of such services, refers to claims for services rendered and unpaid at the time of the filing of the petition. 4 Collier ¶ 502.03[5] [a]. The legislative history of § 502(b)(4) demonstrates that this

section permits the court to examine the claim of a debtor's attorney independently of any other provision and to disallow it to the extent that it exceeds the reasonable value of the attorneys' services. See H.R. Rep. 595, at 352-354 (1977); S. Rep. No. 989, at 62-65 (1978); see also In re Ross, 162 B.R. 785, 790-91 (Bankr. N.D. 1993), overruled on other grounds, Gray-Mapp v. Sherman, 100 F. Supp. 2d 810, 812 (N.D. Ill. 1999).

Debtors filed a voluntary Chapter 7 bankruptcy petition on April 11, 2007. On September 12, 2008, O'Callaghan filed Claim #3, which was an attorney's lien for $49,719.63, including $48,964 in fees and $755.63 in expenses. This proof of claim was filed within the requisite time period because all proofs of claims were due February 18, 2009. Trustee filed an objection to claim #3, pursuant to 11 U.S.C. §§ 502(b)(1), (4), on November 20, 2008. The Court shall review whether O'Callaghan's fees are reasonable, pursuant to 11 U.S.C. § 502(b)(4), and whether O'Callaghan's attorney lien claim is valid, pursuant to 11 U.S.C. § 502(b)(1), based on the substantive state law that created Debtor's obligation.

*Luis' Worker's Compensation Settlement*

O'Callaghan's attorney lien is borne out of Luis' worker's compensation cases and subsequent collection cases. Luis suffered substantial, permanent injuries to his spine while working on November 15, 2001 and May 21, 2002. Thereafter, Luis hired Daniel S. Bailey, David W. Martay, and William H. Martay, individually and d/b/a Martay & Martay, as his attorneys to prosecute his worker's compensation cases, docket numbers 02 WC 15965 and 02 WC 49577, with the Illinois Industrial Commission.

Generally, the Illinois Workers' Compensation Commission ("the Commission") is the exclusive forum for adjudicating disputes arising out of work-related injuries. Kinn v. Prairie Farms/Muller Pinehurst, 859 N.E.2d 99, 101 (Ill. App. Ct. 2006). Section 19(f) of the Workers'

Compensation Act provides that a "decision of the Commission acting within its powers, according to the provisions of paragraph (e) of this Section shall, in the absence of fraud, be conclusive unless reviewed as in this paragraph hereinafter provided." Id. (quoting 820 Ill. Comp. Stat. 305/19(f)). Section 19(f)(1) provides that a proceeding for review must be commenced within 20 days after the party seeking review received the Commission's decision. Id. (citing 820 Ill. Comp. Stat. 305/19(f)(1)). A settlement contract approved by the Commission has the same legal effect as a Commission award, and an approved settlement becomes final after 20 days if neither party seeks review. Id. (citing Alvarado v. Industrial Comm'n, 837 N.E.2d 909 (Ill. 2005)). Illinois public policy generally favors the peaceful and voluntary resolution of disputes. Haisma v. Edgar, 578 N.E.2d 163, 168 (Ill. App. Ct. 1991) (citations omitted). There is a presumption of validity when a settlement is entered into, absent mistake or fraud, and the settlement is conclusive on the parties thereto as to all matters included therein. Id. (citations omitted).

Luis' worker's compensation cases settled for $135,000 in 2004. After 20 days, absent mistake or fraud, the settlement award became final since neither party sought review. Thus, Luis was entitled to $135,000, minus any adjustments for attorney's fees and costs. There is no dispute that $135,000 in settlement proceeds were transmitted to Luis' attorneys, Martay & Martay, on Luis' behalf. Accordingly, on September 15, 2004, attorney David W. Martay issued a check in Luis' name for $107,980, the sum due to Luis after adjustments for attorney's fees and costs, and transmitted the check to Luis' attorney Daniel S. Bailey. Bailey's secretary, Mora, however, deposited the funds into her account at West Suburban Bank. Then, on February 3, 2005, Mora caused to be issued a cashier's check to Luis for $62,410 from the "Law Office of Daniel Bailey," which Mora represented as a partial payment. Mora was later convicted of

fifteen (15) counts of theft in connection with misappropriating one and one half million dollars, including the $107,980 from Luis' 2004 settlement.

On February 21, 2006, Luis retained the services of attorney O'Callaghan to collect the remaining settlement award. In their contractual agreement, Luis agreed to a contingent fee of 40% for "any gross amount recovered . . . [which] may be subject to Court approval" should a suit be filed, plus costs. Suit was filed in the Circuit Court of Cook County, Illinois on December 15, 2006 styled as Solis v. Bailey, No. 05 L 14604. The parties reached a written settlement agreement in 2007. In an order dated March 2, 2007, the Circuit Court of Cook County found that Luis was the sole owner of the original $62,410 that Mora paid him.

On September 12, 2008, O'Callaghan filed proof of claim #3 for $49,719.63 ($48,964 in fees and $755.63 in expenses) in an attorney's lien. He asserts that Mora's transfer of $62,410 was from commingled, stolen funds and Luis' right to this sum could have been contested until the settlement was entered. Thus, O'Callaghan argues that he recovered $122,410, including the $60,000 and the title clearing of $62,410 from the commingled, stolen funds. The Court shall now review whether O'Callaghan has a valid attorney's lien.

*Attorney Lien*

State law governs the secured interests asserted by the parties in bankruptcy. Grochocinski, 2008 WL 4767434, at *8 (citing Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. . . . The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests. . . ."); Worthen Bank & Trust Co., N.A. v. Hilyard Drilling Co. (In re Hilyard Drilling Co.), 840 F.2d 596, 599 n.4 (8th Cir. 1988)). Thus, the Court "look[s] to state law to ascertain what property the debtor owned immediately preceding the time of bankruptcy; what liens thereon, if

any, then existed; the character thereof; and the order of priority among the respective creditors holding such liens." Id. (quoting Commercial Credit Co. v. Davidson (In re Chancellor), 112 F.2d 54, 55 (5th Cir. 1940)). Accordingly, the extent and validity of O'Callaghan's alleged attorney lien on Debtor's assets is determined by state law. In this matter, Illinois is the applicable state law.

The Illinois Attorneys Lien Act provides, in pertinent part:

> Attorneys at law shall have a lien upon all claims . . . which may be placed in their hands by their clients for suit or collection . . . for the amount of any fee which may have been agreed upon by and between such attorneys and their clients . . . .
> To enforce such lien, such attorneys shall serve notice in writing . . . upon the party against whom their clients may have such suits . . . claiming such lien and stating therein the interest they have in such suits . . . . Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien.

770 Ill. Comp. Stat. 5/1.

The Attorneys Lien Act sets forth the requirements for effective liens. People v. Philip Morris, Inc., 759 N.E.2d 906, 911 (Ill. 2001). The attorney must have been hired by a client to assert a claim. Id. The attorney must then perfect the lien by serving notice, in writing, upon the party against whom the client has the claim. Id. The lien attaches from and after the time of the service of the statutory notice. Id. (citing Rhoades v. Norfolk & Western Ry. Co., 399 N.E.2d 969 (Ill. 1979)). Once the attorney's lien is perfected, upon petition "any court of competent jurisdiction" may adjudicate the lien. Id. (citing 770 Ill. Comp. Stat. 5/1).

The parties do not dispute that O'Callaghan has a valid attorney's lien relating to his contingency fee agreement with Debtor. Thus, the issue is whether O'Callaghan recovered

$60,000 or $122,410 for purposes of his contingency fee. Trustee argues that O'Callaghan did not recover the original $62,410 that Mora tendered to Luis on February 3, 2005, more than a year before Luis retained O'Callaghan as counsel, and entered into the March 2, 2007 state court order on Luis' ownership claim. Instead, O'Callaghan only recovered $60,000 from the 2007 settlement agreement. Thus, pursuant to the contingent fee agreement, Trustee asserts that O'Callaghan is entitled to only 40% of $60,000, $24,000, plus $755.63 in costs, and O'Callaghan's claim should be reduced to $24,755.63, pursuant to 11 U.S.C. §§ 502(b)(1), (4).

*Sum Recovered*

O'Callaghan's argument that he recovered $62,410 when he clarified title to the "commingled, stolen funds" is meritless. It is generally held that one cannot purchase and acquire a good title to stolen property, and where personal property is wrongfully taken from the owner, the owner has the right to retake possession whenever and wherever the property may be found. Douglass v. Wones, 458 N.E.2d 514, 519 (Ill. App. Ct. 1983) (citing Hobson's Truck Sales, Inc. v. Carroll Trucking, Inc., 276 N.E.2d 89 (Ill. App. Ct. 1971); Harris v. Lipman, 212 Ill. App. 499 (1918); Baldwin v. Smith, 143 Ill. App. 56 (1908)). An exception to this general rule, however, exists where the property taken is a negotiable instrument. Id. Under these circumstances, if the instrument is taken by a holder in due course of business, then the holder takes the instrument free of all claims against it. 810 Ill. Comp. Stat. 5/306; see also Douglass, 458 N.E.2d at 519. The language "all claims" under the Uniform Commercial Code includes not only claims of legal title, but also all liens, equities or claims of any other kind. Douglass, 458 N.E.2d at 519. Unless one has the rights of a holder in due course, he takes the instrument subject to all valid claims and defenses to it on the part of any party. 810 Ill. Comp. Stat. 5/306; see also Douglass, 458 N.E.2d at 519.

One who takes a negotiable instrument for value, in good faith, and without notice of any claim or defense to the instrument, acquires the rights of a holder in due course. Mut. Serv. Cas. Ins. v. Elizabeth State Bank, 265 F.3d 601, 619-20 (7th Cir. 2001) (citing 810 Ill. Comp. Stat. 5/3-302); see also Coleman v. Heidke, 684 N.E.2d 163, 166 (Ill. App. Ct. 1997); Douglass, 458 N.E.2d at 520. Thus, a holder in due course is someone who takes an instrument that appears to be facially valid, for value, in good faith, without notice that it is overdue, dishonored, or subject to an uncured default with respect to payment, contains no unauthorized signature, has not been altered, and is not subject to certain other defenses. Coleman, 684 N.E.2d at 166 (citing 810 Ill. Comp. Stat. 5/3-302(a)(1), (2)).

Luis was entitled to the original settlement award for $135,000 because his settlement contract was approved by the Commission and became final after 20 days when neither party sought review. Kinn, 859 N.E.2d at 101 (citing 820 Ill. Comp. Stat. 305/19(f)). Luis is also a holder in due course of the February 3, 2005 cashier's check for $62,410 from the "Law Office of Daniel Bailey." 810 Ill. Comp. Stat. 5/3-302(a)(1), (2); 810 Ill. Comp. Stat. 5/306; Douglass, 458 N.E.2d at 519-20; Coleman, 684 N.E.2d at 166; Mut. Serv. Cas. Ins., 265 F.3d at 619-20. The fact that Mora deposited those funds into an account with other "commingled, stolen funds" did not negate Luis' rightful ownership of these funds. The cashier's check was facially valid, for value, in good faith, and given to Luis without notice that it was overdue, dishonored, or subject to an uncured default with respect to payment. Moreover, Mora represented to Luis that the $62,410 was "partial payment" from the law offices of Daniel Bailey for the 2004 settlement award. Thus, the order entered on March 2, 2007 that "clarified" ownership of the $62,410 cannot be considered "gross amount recovered" within the terms of O'Callaghan's contingent fee agreement. Therefore, O'Callaghan is not entitled to 40% of the $62,410.

In addition, the Illinois Supreme Court rejected O'Callaghan's argument that he recovered the $62,410 because he avoided potentially future suits against Luis when he obtained the title clarification judgment for Luis. "[A]ny speculation [that] a *future* challenge to a legal matter, regardless of how well grounded in fact, would allow members of the bar to take most cases on a contingent-fee basis . . . simply does not comport with the plain language of the [Illinois] Code . . . ." In re Doyle, 581 N.E.2d 669, 676 (Ill. 1991). At best, the order clarifying ownership of the $62,410 constituted a speculation of a future challenge. Therefore, this Court holds that O'Callaghan did not recover the $62,410 that was paid to Luis nearly a year before he contracted legal services from O'Callaghan. As a result, O'Callaghan is only entitled to 40% of the $60,000 that he recovered, plus expenses of $755.63, for a grand total of $24,755.63.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Trustee's Motion for Summary Judgment and SUSTAINS Trustee's Objection to Claim #3 in part. The Court also DENIES O'Callaghan's Motion for Summary Judgment.

THEREFORE, IT IS ORDERED that Claim #3 be reduced to twenty-four thousand, seven hundred and fifty-five dollars and sixty-three cents ($24,755.63).

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: June 17, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge